# RENEWAL HOUSE, INC. *v.* DEPARTMENT OF REVENUE

Rolf T. Olson, Dye & Olson, Salem, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered November 15, 1974.

Carlisle B. Roberts, Judge.

Plaintiff has appealed from defendant's Order No. VL 73-519 (dated October 24, 1973). The question presented is the plaintiff's liability for real property taxes for the tax year 1972-1973. It claims exemption under ORS 307.140 as a religious organization.

The plaintiff is a nonprofit California corporation, its articles having been filed in the office of the Secretary of State in California on December 2, 1968. Its specific and primary purpose, according to its articles, is to provide a spiritual retreat center, using as guiding principles the tenets of the Christian religion. The corporation is formed exclusively for charitable, religious and educational purposes. On February 5, 1971, it filed for and was granted a certificate for authority *to engage in business* within the State of Oregon. In 1970, it acquired title and possession of the unimproved real property which is the subject matter of this suit, a total of nine acres in Marion County, lying near Silver Creek Falls State Park. It is identified in the office of the County Assessor of Marion County as Assessor's Account No. 22474-000, in Code Areas 93-00-00-0 and 93-00-08-0.

For the tax year 1971-1972, apparently based upon the deed recorded in Marion County, the unimproved property was assessed to "Renewal House, Inc., 411 W. Main, Silverton, Oregon 97381," at an assessed value of $2,700, with a net tax of $57.17, which was paid. No application was ever made to the county assessor for exemption from taxation.

Following acquisition of the property, it was improved by the building of a two-story lodge, 66 by 34 feet, containing some furnishings, to be used in the corporation's seven-week summer retreat-camping program. It was the corporation's intent, in time, to develop a year-round retreat center. Because of the building, the assessor sent a notice of increase in assessed value to the plaintiff on April 27, 1972, pursuant to the requirements of ORS 308.280 (1), addressing the notice to 411 W. Main, in Silverton, Oregon. (The plaintiff's witness testified that this was the address of the prior owners of the property, Mr. and Mrs. Ernest F. Peterson.) The plaintiff asserts that it never received this notice.

ORS 307.162 requires that, before any exemption from taxation is allowed for any year to a religious institution, the institution or organization claiming the exemption shall file with the county assessor, on or before April 1 in such year, a statement verified by the oath or affirmation of the proper officer of the institution, indicating the property involved and the grounds for exemption. No reason was ever given by the plaintiff to the assessor to assume that the subject property was within the scope of any statutory exemption until November 13, 1972 (presumably after the tax statement for 1972-1973 had been received by the corporation), at which time a claim for exemption (as of January 1, 1972) as a religious organization was filed by Renewal House, Inc., 506 N. 2nd, Silverton, Oregon 97381. The plaintiff's application for exemption was denied by the assessor as having been tardily filed under the April 1 requirement of ORS 307.162, and this denial was affirmed by the defendant's order from which the present appeal is taken.

The basic question before the court, it appears, is whether a religious corporation which has paid property taxes on the subject property but which assumes itself to be exempt from property taxes, can fail to take any affirmative, timely step to protect its alleged rights, vis-a-vis the assessor, and still be granted those rights by virtue of ORS 307.163, when alerted by the receipt of a property tax statement from the tax collector?

The county assessor has a duty to assess all taxable property annually. ORS 308.210. No one has a duty initially to advise the assessor as to what property is taxable and what is exempt. He is entitled to presume that the property is taxable unless and until it is proved otherwise.

The assessor is required, where possible, to place the owner's name on the assessment roll. ORS 308.210 (2) and 308.215 (1)(a). The rolls constitute a continuous record which the assessor must update and correct as to pertinent matters discovered by him or brought to his attention. ORS 308.217. However, the use of the name of the owner of record (although possibly incorrect) is sanctioned and the assessment is valid under a bona fide listing of "unknown owner." ORS 308.240 (2). The assessor is required to maintain an index of the names of every taxpayer, indexed to the assessment rolls. ORS 308.245 (3).

A notice of increased assessment is not invalidated if sent to the presumed taxpayer's address appearing in the tax records (ORS 308.280 (5)), as was done in this case.

The plaintiff failed in two respects to protect itself in its claims against property taxation: (1) By

failing to place a correct address in its deed, the assessor's notice under ORS 308.280 was not delivered; (it could have served plaintiff in lieu of the notice required by ORS 307.163 if it had been received); and (2) by failing to make timely application for exemption pursuant to ORS 307.140.

The plaintiff relies for relief solely upon its interpretation of ORS 307.163, a relief measure enacted by Or Laws 1967 (special session), ch 9, § 3.① This section, as pertinent, reads as follows:

"ORS 307.163. In the case of property that otherwise would be exempt under ORS 307.130 to 307.140, * * * if property taxes are to be assessed on account of the failure of the legal or equitable owner to file the statement required by ORS 307.162, the county assessor first shall notify, by registered or certified mail, the institution or organization owning or purchasing the property of his intention to assess the property for taxation. If the institution or organization files the statement required by ORS 307.162, accompanied by a late filing fee of $10, not later than the 10th day after such notice has been sent to it, according to the records of the county assessor, the property taxes shall be abated. * * *"

Plaintiff contends that this statute required the notice from the county assessor described in ORS 307.163 before he could assess the subject property. Obviously, ORS 307.163 is clearly applicable only to a property owner which is already known to the county assessor as a claimant of exempt property. The assessor has no reason to anticipate a "failure." The failure may be *ab initio,* as in the present instance. More often, it arises from the oversight of an exempt

① Neither party has suggested that ORS 307.475 (1974 Replacement Part) was applicable to this case.

corporation, still relying on its original certificate of exemption, to report to the assessor changes in use or additions to its original property. (Note ORS 307.162 (1).) The court concludes that the plaintiff, in this factual situation, cannot claim the privilege granted by ORS 307.163.

As a group, exempt corporations are notorious for their failures to protect their tax advantages. It is recognized that in many such organizations, office-holders and board members change frequently and are not business oriented. On a number of occasions, the Oregon Legislative Assembly has enacted special, temporary statutes to protect retroactively the exemption lost by a recognized exempt corporation through failure to meet the statutory requirement to give timely information to the county assessor.[2]

ORS 307.163 appears to have been drafted as a permanent measure which would always give a *known* religious corporation a second opportunity but, logically, it only has application when the corporation has taken the initial step of making itself known to and accepted by the county assessor as an exempt organization under the provisions of the pertinent statute. It has application when the assessor notes an apparent addition to property or apparent abandonment or change of use, causing him to believe that an amendment of the assessment roll is required. The enactment by the legislature of the temporary "second chance" statutes referred to above, capped by the enactment finally of ORS 307.163, dispels any suggestion of the latter's application to a corporation

---

[2] For example, see Or Laws 1963, ch 260, at 371; Or Laws 1965, ch 330, at 674; and Or Laws 1971, ch 605, § 2.

which has not made a record of any color of right to exemption in the assessor's office.

■ In the present suit, the testimony is clear that the well-intentioned assessor could not discern from any slightest evidence (including the corporate title of the plaintiff), or any overt action of the plaintiff, that it had a claim for exemption. The fault lies with the claimant. It must act responsibly.[9] In some prior year, or even the current year, the minimal requirements of ORS 307.162 must be met before the assessor has any duty to give the ORS 307.163 notice. The ORS 308.280 notice was properly issued under the facts of this suit. The assessor could have functioned in no other way.

In this state of the record, the second issue, whether or not the plaintiff is entitled to the exemption of the subject property because of the manner of its use by a religious corporation, becomes moot.

The defendant's order is affirmed.

---

[9] See *Otto & Harkson Co. v. Josephine Co.*, 207 Or 199, 207, 295 P2d 875 (1956); *Knapp v. Josephine County et al.*, 192 Or 327, 353, 235 P2d 564 (1951). *Cf.* ORS 311.555.